J. S. TWYMAN and M. G. TWYMAN v. GUS ROELL.

166 So. 215.

Division .B.

Opinion Filed February 20, 1936.

Rehearing Denied March 13, 1936.

*Twyman & McCarthy,* for Appellant;
*Baker & White,* for Appellee.

TERRELL, J.—In June, 1931, appellants and appellee entered into a written contract to improve and farm for a

period of five years a tract of land in Palm Beach County described as the South half (S½) of Section Fourteen (14), Township forty-one (41) South, Range thirty-seven (37) East. The appellants agreed to advance the sum of Twelve Hundred Fifty Dollars ($1,250.00) for the first year and for each succeeding year during the life of the contract one-third of whatever amount was found to be necessary to the undertaking. Appellants also agreed to devote their time and energy to effectuate the purposes of the contract and to receive as compensation One Hundred Dollars per month for the time actually engaged in the farming operations and two-thirds of the net profits from the undertaking.

The appellee agreed to furnish Three Thousand Dollars ($3,000.00) for the first year and for each succeeding year during the life of the contract he agreed to advance two-thirds of whatever amount was found necessary for its purpose and to receive as his compensation one-third of the net profits derived from the undertaking. It was provided that all funds contributed to the undertaking should first be returned to the partners before any profits were distributed. If there was a loss the partners were required to bear their proportionate share of it. A settlement was required at the end of each farming season. The farming season was from the late fall to the early summer of the next year and each partner understood the importance of meeting his obligations under the contract promptly.

The contract was complied with by all parties for the 1931-1932 crop season, at the end of which a distribution was made, but no profits were made for that season. Preparations were made for the 1932-1933 crop and among other things it was agreed to plant a large crop of English peas, about fifty acres. It was understood that the planting season for English peas and other crops was January and the

cost of planting such crops was known. Appellants prepared the land and repeatedly called on appellee before and after planting time to comply with the contract by putting up his part of the money but failing to do so in any material amount appellants were unable to plant English peas and other crops were necessarily planted late and sold at a reduced price. Appellants continued to plant and cultivate such crops as they had to the end of the season notwithstanding the failure of appellee to comply with the contract on his part. At the close of the season the partnership showed a balance of $4,533.00 besides farming equipment on which then was outstanding two notes in the sum of $125.00 each.

In June, 1933, the crop season having closed, appellants notified appellee in writing that they had elected to dissolve the partnership and that it stood dissolved from that date. Appellants being the bookkeepers for the partnership, advised appellee of its status and asked for a settlement at the time of the notice of dissolution. No settlement was reached because of difference between appellants and appellee as a basis for allowing of damages for failure of appellee to comply with the contract.

In August, 1933, appellants as complainants instituted this suit in the Circuit Court of Palm Beach County. The bill of complaint set up the contract, the breach of it by defendant, and alleged that there is now in the Bank of Pahokee, Florida, to the credit of the partnership the sum of $4,533.00, that other assets of the partnership consist of tractors, trucks, plows, discs, planters, distributors, and other small tools and machinery, that complainants desire to continue their farming operations for the season of 1933-1934, that because of the breach of the contract by defendant and the consequent damage therefrom to complain-

ants the defendant should be decreed to have no interest in any of the assets of the partnership, that the sum held in the bank to the credit of the partnership is more than sufficient to cover all claims made by defendant, even if they are valid, that said sum will be left in the bank pending disposition of this cause, and that pending its outcome complainants should be permitted to use or sell at a fair market price the farm equipment which would in no wise injure the defendant.

The bill prays that the dissolution of the partnership be confirmed and that an accounting be had between complainants and defendant, that after due consideration of all matters alleged in the bill, including the matter of damages caused by defendant to complainants by reason of his breach of the contract the Court determine and decree that the assets enumerated are the property of complainants freed from all claims of defendant, and that complainants pending the outcome of this cause be permitted to use or sell at a fair market price the farm machinery and other equipment.

An answer and a cross bill were filed admitting the partnership but denying the breach of it. A general master was appointed to take testimony with authority to make findings of law and fact. In October, 1934, the master filed his report in which he found all the material allegations of the bill to be sustained. He found, however, that the loss to complainants by defendant's breach of the contract was represented in prospective profits from the sale of crops never planted which is in law speculative and conjectural and not a proper element of damage. He cited numerous Florida cases relied on to support his conclusion. Both parties excepted to the master's report. The chancellor overruled all exceptions and entered his decree con-

firming it, the effect of which was to permit the defendant to recover $4,003.41 of the fund on deposit. From this final decree the cause is here on appeal.

The sole question urged for determination is that the finding of the master, approved by the chancellor, as to the law of prospective profits is erroneous and is based on a wrong interpretation of the Florida cases relied on. The master's finding of fact is admitted to be correct.

In his finding of law the master relied on Vaughan's Seed Store v. Stringfellow, 56 Fla. 708, 48 So. 410; Payne v. Ivey, 83 Fla, 436, 93 So. 143; Hodges v. Fries, 34 Fla. 63, 15 So. 682; Brooks v. Long, 67 Fla. 68, 64 So. 452; and Bayshore Development Co. v. Bonfoey, 75 Fla. 455, 78 So. 507. These cases have been examined and none of them is. in point with and consequently not decisive of the case at bar. To be of value as a precedent the questions raised by the pleadings and adjudicated in the case cited as a precedent must be in point with those presented in the case at bar. The question of prospective profits was not raised in the pleadings in any of the above cases and was consequently not before the court in any of them. In Vaughan's Seed Store v. Stringfellow, the case most strongly relied on, the court stated specifically that the question of prospective profits was not before it.

The rule is well settled that if there is a yardstick or measure of damages by which prospective profits may be determined and they arise out of. a contract in which profit is the inducement to its making they may be allowed if proven whether they arise from farming, mechanical, or other contracts.

This rule was approved in Hodges v. Frica, *supra,* where the court said that if prospective profits form an elemental constituent of the contract, their loss, the natural result of

its breach, and the amount can be established with reasonable certainty, such certainty as satisfied the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained.

The following cases involving prospective profits for the loss of crops support the rule as here stated: Brinchfield .v. Allen, 25 Tex. Cov. App. 258, 60 S. W. 1010; Mackey v. Boswell, 63 Okla. 20, 162 Pac. 193; Rice v. Whitmore, 74 Cal. 619, 16 Pac. 501, 5 Am. St. Rep. 479; Depew v. Ketchum, 27 N. Y. S. 8, 75 Hun. 227; Hoy v. Gronoble, 34 Pa. St. 9, 75 Am. Dec. 628; Schrandt v. Young, 2 Neb. (Un. Of.) 546, 89 N. W. 607; Rule v. McGregor, 117 Iowa 419, 90 N. W. 811; Malone v. Hastings, 193 Fed 1. As applied to ordinary contracts the cases are legion which support this rule. Bagley v. Smith, 10 N. Y. (6 Selden) 489, 61 Am. Dec. 756; Barnett v. Caldwell Furniture Co., 277 Ill. 286, 115 N. E. 389.

Uncertainty of the amount or difficulty of proving the amount of damage with certainty will not be permitted to prevent recovery on such contract. If it is clear that substantial damages have been suffered, the impossibility of proving its precise limits is no reason for denying substantial damages altogether. Williston on *Contracts*, Vol. 3, Sec. 1344; Bagley v. Smith, *supra;* Hetzel v. Baltimore & O. Ry. Co., 169 U. S. 26, 18 Sup. Ct. 255, 42 L. Ed. 648; Pierce v. Tenn. Coal, Iron & R. R. Co., 173 U. S. 1, 10 Sup. Ct. 335, 43 L. Ed. 591; Barnett v. Caldwell Furniture Co., *supra.*

The uncertainty which defeats recovery in such cases has reference to the cause of damage rather than to the amount of it. If from proximate estimates of witnesses a satis-

factory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person. Delta Table & Chair Co. v. Yazoo & M. V. R. Co., 105 Miss 861, 63 So. 272; Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676, text 678; 17 C. J. 756, 759.

Now let us see if the facts in the case at bar brings it within the rule as here announced and approved by us. In the first place, it is founded on an express contract in which the profits brought in question were the sole inducement to its making. It was instituted after the close of the crop season when climatic and other conditions which so often materially effect crops was known.

The master found that complainants in all respects met the conditions of the contract on their part, that during the month of January, 1933, they had fifty acres of land ready to plant English peas, that they had a right to determine what crops would be planted and when they should be planted, and that they had a well defined intention to plant English peas, that pea seed were available, that during the season from January 1 to April 1, 1933, there were no weather conditions which would have seriously injured a crop of English peas and no prevalence of insects or diseases which would have materially inpaired the crop, that the average yield of English peas on muck land of the same general quality and character in the vicinity was 150 hampers per acre, that for the season of 1933 the yield was equal to or in excess of that figure, and that the cost of production from evidence in the record was such that the plaintiffs should have realized $1.50 per hamper. It is a well known fact that the muck lands in the vicinity of this farm are all of similar character and the writer of this opinion has seen hundreds of acres of peas, beans, potatoes, cane, and other

crops growing there that would not materially vary in the amount produced per acre.

The defendant himself testified that if they had planted peas they would have made plenty of money. The master further found that in all probability there was substantial damage to the partnership in the loss of profits upon the contemplated planting of English peas and that if the question was an open one much might be said upon the principle in support of the allowance of loss of profits estimated upon the averages found.

We think the findings of the master about which there is no dispute bring the case at bar easily within the rule as here announced and that he misinterpreted the Florida cases cited in the forepart of this opinion. There was ample showing of a yardstick by which the measure of damages might be determined.

The decree is accordingly reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.

ELLIS, P. J., and BUFORD, J., concur.

WHITFIELD, C. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.